| United States District Court, Northern District of Illinois | | | | |
|---|---|---|---|---|
| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge If Other than Assigned Judge | | |
| CASE NUMBER | 02 C 3178 | DATE | | 9/29/03 |
| CASE TITLE | Capital Factors, Inc vs. Kmart Corporation | | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION: The following orders of the bankruptcy court are reversed: (1) Order Under 11 U.S.C. § 105(a) Authorizing the Payment of Prepetition Claims of Certain Critical Trade Vendors; (2) Order Pursuant to 11 U.S.C. §§ 105(a) and 363 Authorizing Payment of Prepetition Obligations Necessary to Obtain Imported Merchandise; (3) Order Pursuant to 11 U.S.C. §§ 105(a) and 363 Authorizing the Debtors to Honor Reimbursement Obligations to Issuers of Pre-Petition Letters of Credit Issued for the Benefit of the Debtors' Foreign Vendors; and (4) Order Under 11 U.S.C. § 105(a) Authorizing the Payment of Prepetition Claims of Certain Liquor Vendors. The case is remanded for further proceedings.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 3 0 2003 date docketed | 9 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| AMM | courtroom deputy's initials | date mailed notice | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 3 0 2003

CAPITAL FACTORS, INC., )
)
    Appellant, )
)
v. ) No. 02 C 1264
) (CONSOLIDATED WITH
KMART CORPORATION, ) 02 C 1265, 02 C 2086,
) 02 C 2088, 02 C 3178)
    Appellee. )

### MEMORANDUM OPINION

Capital Factors, Inc. appeals from four final orders of the bankruptcy court that authorized Kmart to pay certain prepetition obligations. For the reasons explained below, the bankruptcy court's orders are reversed.

### BACKGROUND

On January 22, 2002, Kmart Corporation and certain of its domestic subsidiaries and affiliates, debtors and debtors-in-possession (collectively, "Kmart") filed a voluntary petition for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code. As part of its "first day motions" filed on that date, Kmart sought authority to pay prepetition obligations to certain "critical vendors" (the "Critical Vendors Motion") and certain foreign vendors (the "Foreign Vendors Motion"). Kmart contended that these payments were necessary to maintain relationships essential to its continued operation and

reorganization, and it invoked the "doctrine of necessity" and 11 U.S.C. § 105(a) for the bankruptcy court's authority to permit these payments.

The same day, the bankruptcy court held a hearing and heard evidence on these motions. Appellant Capital Factors, Inc. ("Capital") objected to both motions. (Capital is a factoring agent[1] for a number of Kmart's apparel suppliers, and it holds general unsecured claims against the bankruptcy estate of approximately $20 million.)

Regarding the Critical Vendors Motion, the court stated:

> Motions to pay certain critical trade creditors always present difficult questions for courts. We're seeing more and more of them, and our problem is that we have to stretch to find some authority to do them. However, I, after hearing this testimony and reading the affidavit [of Charles C. Conaway, Kmart's Chief Executive Officer], am convinced that Fleming, Handleman and the egg and dairy vendors--and I would like a list of the specific vendors that you would like included in this motion--as well as the advertising concerns, are necessary to keep this business going as a going concern.

(App. to Appellee's Brief, Ex. 4A, at 162.) Accordingly, the bankruptcy court granted the Critical Vendors Motion. Without reciting specific findings from the bench, the bankruptcy court also granted the Foreign Vendors Motion. (Id. at 173.) On January 25, the bankruptcy court entered written orders granting both motions.

---

[1] A factoring agent purchases accounts receivable from its customers and assumes the collection responsibilities. See Mr. Furniture Warehouse, Inc. v. Barclays Am./Commercial Inc., 919 F.2d 1517, 1519 (11th Cir. 1990).

On February 1 and 8, 2002, Kmart filed motions seeking authority to pay issuers of prepetition letters of credit (the "Letters of Credit Motion") and prepetition claims of certain liquor vendors (the "Liquor Vendors Motion"). On February 13, the bankruptcy court held a hearing on these motions, heard evidence, and granted both motions over Capital's objections. Regarding the Letters of Credit Motion, the court stated:

> Because the foreign vendors are integral to the reorganization of this Debtor and the Court already ruled on the payment of certain foreign vendors as part of the critical vendors motions and I believe that this is just a component of that particular transaction, and further finding that I may be inconsistent if I do not grant the relief that is requested here, I am going to go ahead and sign your order authorizing the reimbursement of the obligations to the issuers of Letters of Credit.

(Id., Ex. 4B, at 251.) The bankruptcy court also granted the Liquor Vendors motion, "finding that there [was] a good business justification for it." (Id. at 269.) Written orders granting the motions were entered that same day.

Capital filed notices of appeal from each order, and we granted Capital's motion to consolidate the appeals. The parties' briefing is complete, and we heard oral argument on the appeals as well.

## DISCUSSION

This court has jurisdiction over the instant appeals pursuant to 28 U.S.C. § 158(a)(1). On appeal from an order of the bankruptcy court, we review the bankruptcy court's factual findings

under a "clearly erroneous" standard and its conclusions of law de novo. See In re Smith, 286 F.3d 461, 464-65 (7th Cir. 2002); Fed. R. Bankr. P. 8013.

Capital raises the following issues on appeal: (1) whether 11 U.S.C. § 105(a) or the "doctrine of necessity" provides a bankruptcy court with either statutory authority or equitable power to allow the payment of selected prepetition unsecured trade claims prior to confirmation of a Chapter 11 plan[2]; (2) whether there was a sufficient evidentiary basis for the bankruptcy court to allow payment of certain prepetition claims; and (3) whether state laws prohibiting liquor wholesalers from selling products to Chapter 11 debtors legally unable to pay their prepetition debt are invalid or unenforceable to the extent that they conflict with the Bankruptcy Code.[3] Kmart raises the additional issue of whether Capital's appeals are moot because Kmart has already paid a substantial portion of the prepetition claims.

A. **The Bankruptcy Court's Power Under § 105**

We first examine the question of whether the bankruptcy court had the power to authorize the pre-plan payment of prepetition claims. The court relied on 11 U.S.C. § 105(a) to authorize the

---

[2] For convenience, we will refer to the time period prior to confirmation of a Chapter 11 plan as "pre-plan."

[3] Capital also raises what it deems a separate issue of whether "a bankruptcy court may utilize" § 105(a) or the "doctrine of necessity" "to circumvent explicit provisions of the Bankruptcy Code." (Appellant's Brief at 2.) We view this issue as being part and parcel of the first issue listed supra.

payments. Section 105(a) addresses the equitable powers of bankruptcy courts and provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Although the bankruptcy court did not refer specifically to the equitable "doctrine of necessity" when ruling on the motions in open court or in its written orders,[4] Kmart relies on the doctrine. It is derived from the "necessity of payment rule," which was developed and used in railroad reorganizations "as justification for the payment of pre-petition debts paid under duress to secure continued supplies or services essential to the continued operation of the railroad." B & W Enters., Inc. v. Goodman Oil Co. (In re B & W Enters., Inc.), 713 F.2d 534, 537 (9th Cir. 1983). The rule has subsequently evolved into the "doctrine of necessity," which has been applied in non-railroad reorganizations to justify the pre-plan payment of prepetition claims of creditors who threaten to withhold goods or services believed critical to the debtor's continued viability and

---

[4] As noted supra, the bankruptcy court did, however, find that the payments were "necessary," "integral," and that there was "good business justification" for them.

reorganization.[5] The doctrine is not codified anywhere in the Bankruptcy Code, so the only way to apply it is through § 105.

The Seventh Circuit has stated that the grant of equitable power in § 105 is limited in that it "allows [bankruptcy] courts to use their equitable powers only as necessary to enforce the provisions of the Code, not to add on to the Code as they see fit." In re Fesco Plastics Corp., 996 F.2d 152, 156 (7th Cir. 1993); see also Gouveia v. Tazbir, 37 F.3d 295, 300 (7th Cir. 1994) ("The Supreme Court has taught that any grant of authority given to the bankruptcy courts under § 105 must be exercised within the confines of the bankruptcy code.") (citing Norwest Bank Worthington v. Ahlers, 485 U.S. 197 (1988)).

The Bankruptcy Code sets forth a priority scheme for the payment of claims. See 11 U.S.C. §§ 503, 507. The Code does not carve out priority or administrative expense status for prepetition general unsecured claims based on the "critical" or "integral" status of a creditor. But the effect of the bankruptcy court's orders was to elevate the claims of the "critical" vendors over those of other unsecured creditors and to subordinate the claims of non-"critical" unsecured creditors. The bankruptcy court altered the priority scheme set forth in the Bankruptcy Code.

---

[5] See 2 William L. Norton, Jr., Norton Bankr. L. & Prac. 2d § 42:11 (Supp. 2002), for a good discussion of the doctrine's history.

There is a split in the courts regarding whether § 105 authorizes bankruptcy courts to permit pre-plan payment of prepetition unsecured claims. As set forth in Kmart's briefs, many bankruptcy courts and a handful of district courts have held that bankruptcy courts do in fact have this power. See, e.g., In re Just For Feet, Inc., 242 B.R. 821 (D. Del. 1999); Michigan Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279 (S.D.N.Y. 1987); In re CoServ, L.L.C., 273 B.R. 487 (Bankr. N.D. Tex. 2002); In re Wehrenberg, Inc., 260 B.R. 468 (Bankr. E.D. Mo. 2001).

On the other hand, as Capital points out, a number of courts of appeals and a few lower courts have held just the opposite. See, e.g., Official Comm. of Equity Sec. Holders v. Mabey, 832 F.2d 299 (4th Cir. 1987); B & W Enters., Inc. v. Goodman Oil Co. (In re B & W Enters., Inc.), 713 F.2d 534 (9th Cir. 1983); Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt. Inc.), 4 F.3d 1329 (5th Cir. 1993); In re FCX, Inc., 60 B.R. 405 (E.D.N.C. 1986); In re Timberhouse Post & Beam, Ltd., 196 B.R. 547 (Bankr. D. Mont. 1996).[6] We agree with the latter courts' view that we cannot ignore the Bankruptcy Code's statutory scheme of priority in favor

---

[6] Cf. Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg Co.), 963 F.2d 1490 (11th Cir. 1992) (bankruptcy court had no authority to allow cross-collaterization, a method of securing prepetition debt with prepetition and postpetition collateral); Southern Ry. Co. v. Johnson Bronze Co. (In re Johnson Bronze Co.), 758 F.2d 138 (3d Cir. 1985) (bankruptcy court had no authority to grant lien status to a prepetition contractual indemnification claim); Crowe & Assocs., Inc. v. Bricklayers & Masons Union Local No. 2 (In re Crowe & Assocs., Inc.), 713 F.2d 211, 216 (6th Cir. 1983) (dictum).

of "equity," especially in light of the Seventh Circuit's admonition that "[t]he fact that a [bankruptcy] proceeding is equitable does not give the judge a free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness, however enlightened those views may be." In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 791 F.2d 524, 528 (7th Cir. 1986).

We acknowledge that the application of the "doctrine of necessity" through § 105 in this situation is well-intended and may even have some beneficial results, in that pre-plan payment of certain prepetition claims allows the debtor to minimize disruptions in doing business, and thus may further reorganization. Nevertheless, it is clear that however useful and practical these payments may appear to bankruptcy courts, they simply are not authorized by the Bankruptcy Code. Congress has not elected to codify the doctrine of necessity or otherwise permit pre-plan payment of prepetition unsecured claims.

Because we hold that the bankruptcy court did not have either the statutory or equitable power to authorize the pre-plan payment of prepetition unsecured claims, we need not address the second and third issues Capital raises on appeal.

B. **"Equitable Mootness"**

Kmart does not persuade us that Capital's appeals are moot due to the fact that the prepetition claims have been substantially

paid. Kmart makes much of the fact that Capital did not seek a stay of the bankruptcy court's orders. It is highly unlikely, however, that a motion to stay would have been successful. It would be inconsistent for the bankruptcy court to enter the orders on the theory that prompt payments were necessary to keep Kmart operational, and then turn around and stay those orders.[7] In any event, Capital was not required to seek a stay of the orders in order to preserve its appellate rights.

Kmart also argues that the appeals are "equitably moot" because effective relief on appeal has become imprudent and inequitable. The term "equitable mootness" was "anathematized by Judge Easterbrook"[8] in the case of In re UNR Industries, Inc., 20 F.3d 766, 768 (7th Cir. 1994). The Seventh Circuit in UNR "banish[ed] the term 'equitable mootness' from the (local) lexicon," 20 F.3d at 769, because it is misleading: "[t]here is a big difference between inability to alter the outcome (real mootness) and unwillingness to alter the outcome ('equitable mootness')." Id. Nonetheless, the "now nameless doctrine" lives on and "is perhaps best described as merely an application of the age-old principle that in formulating equitable relief a court must consider the effects of the relief on innocent third parties."

---

[7] See Charles Jordan Tabb, Emergency Preferential Orders in Bankruptcy Reorganizations, 65 Am. Bankr. L.J. 75, 108 (1991).

[8] In re Envirodyne Indus., Inc., 29 F.3d 301, 304 (7th Cir. 1994).

Envirodyne, 29 F.3d at 304. The basic questions under the doctrine, then, are these: is it prudent and fair to undo what the bankruptcy court did?[9] See UNR, 20 F.3d at 769; Envirodyne, 29 F.3d at 304.

Kmart argues that we should not reverse the orders allowing payment of the prepetition claims because the parties receiving the payments have already acted in reliance on them. As noted supra note 9, however, this is not a situation where there has been confirmation of a bankruptcy plan. Accordingly, it is not too late to order that the monies paid be returned. Kmart also claims that undoing the bankruptcy court's orders would "paralyze" Kmart by forcing it to "undergo the Herculean task of immediately commencing thousands of lawsuits to collect hundreds of millions of dollars from thousands of vendors." (Appellee's Brief at 45-46.) We are not persuaded by Kmart's doomsday speculations. It is not evident that Kmart will have to sue to recover the payments, and in fact, Kmart cites no cases indicating that the bankruptcy court would not have the power to order the return of the monies paid.

C.  **J.P. Morgan Chase's Brief**

J.P. Morgan Chase ("JPM"), which is an "administrative agent for the lenders under various pre-petition credit agreements among

---

[9] As Capital points out, it is worth noting that most of the cases addressing or applying the doctrine involved appeals of orders confirming bankruptcy plans of reorganization. See, e.g., UNR, 20 F.3d 766; Mac Panel Co. v. Virginia Panel Corp., 283 F.3d 622 (4th Cir. 2002). Those cases are distinguishable from the instant proceeding because there has not yet been a confirmation of Kmart's plan.

such lenders and Kmart" (JPM Brief at 1), has filed a supplemental brief regarding the Letters of Credit Motion. JPM contends that, even if the bankruptcy court did not have the authority under § 105 to authorize Kmart to pay the prepetition claims of the issuers of the letters of credit, the court "properly allowed those payments [pursuant to § 361 of the Bankruptcy Code] on the basis that such payments constituted adequate protection for the Issuers' secured reimbursement claims under the Letters of Credit." (JPM Brief at 2.) According to JPM, the issuers had statutory liens in the documents and the proceeds thereof presented by the foreign vendors to obtain payment under the letters of credit, and the issuers were entitled to adequate protection of those liens under § 361 of the Code.[10]

In authorizing the payments to the issuers of the letters of credit, the bankruptcy court did not rely on § 361. We may affirm the bankruptcy court's decision on an alternative ground, but that

---

[10] Section 361 provides:
When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by--
1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

ground must have been adequately presented in the bankruptcy court. See Anderson v. U.S.F. Logistics (IMC), Inc., 274 F.3d 470, 478 (7th Cir. 2001) (citing Logan v. Caterpillar, Inc., 246 F.3d 912, 924 (7th Cir. 2001)). Neither Kmart nor the issuers raised the adequate protection issue at the hearing on the Letters of Credit Motion. The bankruptcy court was not presented with evidence on whether the issuers held valid security interests nor whether they were entitled to adequate protection. There is an insufficient basis in the record to allow a finding that the payments to the issuers constituted adequate protection under § 361 of the Bankruptcy Code.

## CONCLUSION

For the foregoing reasons, the following orders of the bankruptcy court are reversed: (1) Order Under 11 U.S.C. § 105(a) Authorizing the Payment of Prepetition Claims of Certain Critical Trade Vendors; (2) Order Pursuant to 11 U.S.C. §§ 105(a) and 363 Authorizing Payment of Prepetition Obligations Necessary to Obtain Imported Merchandise; (3) Order Pursuant to 11 U.S.C. §§ 105(a) and 363 Authorizing the Debtors to Honor Reimbursement Obligations to Issuers of Pre-Petition Letters of Credit Issued for the Benefit of the Debtors' Foreign Vendors; and (4) Order Under 11 U.S.C. § 105(a) Authorizing the Payment of Prepetition Claims of Certain Liquor Vendors.

The case is remanded for further proceedings consistent with this opinion.

Date:   September 29, 2003

ENTER:  _____
        John F. Grady, United States District Judge